UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re:

**WINDY BUTTE RECLAMATION FACILITY, LLC,**

Case No. **15-60615-JDP**

Debtor.

*MEMORANDUM of DECISION*

*Introduction*

This decision considers the Trustee's Application for Final Compensation and Reimbursement of Expenses ("the Application") filed in this chapter 7[1] case by trustee Darcy M. Crum ("Trustee") on January 24, 2018. Dkt. No. 193. Because it had concerns about the amounts requested by Trustee for compensation, the Court conducted a brief hearing

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.

MEMORANDUM OF DECISION – 1

concerning the Application on March 5, 2018, at which Trustee appeared and argued. *See* Minute Entry, Dkt. No. 197.[2] At the hearing, to address its questions, the Court authorized Trustee to file an affidavit setting forth facts and details to support the amounts requested in the Application. Trustee filed that affidavit ("Affidavit") on March 29, 2018. Dkt. No. 200. Having reviewed the record and submissions, including the Application and the Affidavit, the Court is left in the uncomfortable position of having to decide whether Trustee's request for about $76,000 in fees in a case that will result in effectively no distributions to unsecured creditors should be approved. This is a tough call, indeed.

*Background and Facts*

In this Court's experience, in most chapter 7 asset cases, the chapter 7 trustee requests compensation in the form of a "commission" under § 330(a)(7). The requested fees are most times, but not always, the maximum allowed under § 326(a) based upon the amounts to be

---

[2] Attorneys for Debtor and for the U.S. Trustee also appeared and supported of Trustee's fee request in the Application.

MEMORANDUM OF DECISION – 2

distributed by the trustee to creditors in the case. As interpreted by the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), these Code provisions effectively restrict the role of the bankruptcy court in reviewing trustee compensation requested in routine chapter 7 cases, even in those where the trustee provided limited services to earn the fee, and unsecured creditors will benefit little, or not at all, from the those services. *See In re Salgado-Nava*, 473 B.R. 911, 917 (9th Cir. BAP 2012).[3] The message from the BAP is clear enough: in an ordinary chapter 7 asset case, assuming they do not exceed the § 326(a) "caps", a trustee's fees should be approved by the Court.[4]

---

[3] Of course, there is nothing that prevents a trustee from requesting fees in routine cases that are less than the § 326(a) maximums. Commendably, this practice is employed in this bankruptcy judge's home district by chapter 7 trustees, especially in those cases where the amount of distributions to unsecured creditors are disproportionate to the maximum compensation allowed to the trustee by the Code. Presumably, trustees request less-than-maximum compensation motivated by their sense of equity; if unsecured creditors are receiving little (or nothing), they may reason, why should trustees receive payment in full? It is perhaps ironic that, under *In re Salgado-Nava*, a bankruptcy court may not adjust trustee fees in the same situation based upon equitable considerations.

[4] Of course, the strict § 330(a)(7) commission approach to trustee compensation in asset chapter 7 cases based upon the maximum amounts in

MEMORANDUM OF DECISION – 3

However, the rule announced in *In re Salgado-Nava* will not always apply. In chapter 7 cases presenting "extraordinary circumstances", the presumption under §§ 326(a) and 330(a)(7) that the trustee should receive maximum compensation, if requested, is inapplicable. In such cases, like all other estate professionals, the trustee must demonstrate by appropriate evidence that her requested fee is "reasonable". *Id.*

In this case, Trustee has not exercised discretion to seek reduced fees based upon the lack of any meaningful distribution to unsecured creditors. As explained below, there are aspects of this case that make it difficult for the Court to endorse Trustee's proposed fee request.

According to Trustee's proposed Final Accounting ("TFR") filed on January 24, 2018, Dkt. No. 191, she will distribute a total of about $1,750,000

---

§ 326(a) is inherently imprecise when compared to gauging fees based upon the actual trustee services provided in each case. The system is a two-edged sword. Sometimes, the § 326(a) maximum over-compensates trustees for their services. Other times, especially in small-asset cases, the § 326(a) maximum compensation pays them less than "reasonable" compensation when compared to the nature and extent of trustee services, or the benefits bestowed by those services on the creditors. However, under the Code, trustee compensation is determined "case-by-case", and that a trustee may have been under-compensated in other cases is not a proper basis to over-compensate her in the present case.

MEMORANDUM OF DECISION – 4

15-60615-JDP Doc#: 202 Filed: 05/16/18 Entered: 05/16/18 13:18:52 Page 5 of 19

to secured and administrative expense creditors in this case. $1,500,000 of that sum was paid to a single secured creditor. Of the balance, nearly all will be spent satisfying a variety of administrative expenses. These include, in addition to the $76,000 Trustee proposes that she receive in trustee compensation, $12,200.00 in compensation and expenses to Trustee for serving as her own attorney in the case; $64,075.69 to her retained counsel for its fees and costs; and $10,332.39 to Debtor's attorney for his compensation and expenses. The Trustee compensation and professional fees total $162,608.08.[5]

After these and other miscellaneous administrative claims are satisfied, a paltry $4,000 will remain which Trustee intends to distribute as part payment on a prepetition priority state tax claim. The other prepetition unsecured creditors, holding almost $4,500,000 in claims, will receive nothing at all. This outcome must be, at best, disappointing for those creditors.

---

[5] This figure does not include an additional $5,772.20 paid to Trustee's accountant.

MEMORANDUM OF DECISION – 5

To support her fee request, the Affidavit, together with other matters in the record, describe the services rendered by Trustee in administering this case. They were extensive. In addition to the routine trustee duties required in any bankruptcy case, the bulk of Trustee's work related to her efforts to administer an environmentally-tainted salt water injection well and related real estate. As Trustee explains, this was a daunting challenge. Since the real estate was heavily encumbered property, and the impact of the environmental problems severely impacted its market value, there was no equity for the estate in this property and Trustee first attempted to abandon it. However, her request to do so was met by an objection from the Department of Environmental Quality ("DEQ"). At that point, Trustee apparently decided it was more constructive to attempt to sell the dirty property than to litigate with the government about abandonment.

Trustee logged what she contends was hundreds of hours in search of a buyer and completing a sale of the real estate. When Trustee finally located a potential buyer and made a deal, the price was insufficient to

MEMORANDUM OF DECISION – 6

satisfy that amount due on even the first-priority lien against the property. However, Trustee persuaded the lien creditor to allow the sale, and as part of that sale, Trustee negotiated a ten per cent "carve-out" from the net sale proceeds with the secured creditor. Presumably, the purpose of this carve-out was to pay the estate's administrative expenses and to benefit the unsecured creditors in the bankruptcy case. *See* Affidavit at ¶ 21 (Trustee avers that, in considering proposed sales of the property, "I was constantly calculating administrative expenses to make sure there would be money for unsecured creditors.")[6] The sale was eventually approved by the Court without objections from others.

But, as things turned out, Trustee's goal of securing a benefit from the sale for unsecured creditors will not be realized. Rather than using funds from the sale to pay even a small dividend to unsecured creditors, Trustee now proposes that they be used to pay her maximum

---

[6] In retrospect, the Court is puzzled by Trustee's logic. When Trustee negotiated the carve-out with the secured creditor, she surely realized that, if she were to later seek maximum compensation, there would be precious little for unsecured creditors after paying other administrative expenses.

MEMORANDUM OF DECISION – 7

compensation. To support her fee request even though unsecured claimants will receive next to nothing, Trustee argues that her efforts in this case resulted in indirect benefits because of the transfer of the property to a buyer that will "clean it up." *See* Affidavit at ¶ 29 (Trustee observes that "[t]he results in this case, given the contaminated piece of property, were meaningful even though the benefit to creditors was not entirely financial. The property was cleaned up for the benefit of all.")

The issue for the Court is whether, under these circumstances, is it reasonable for Trustee to receive maximum compensation in this case?

### *Applicable Law*

In addition to the brief discussion of the Code and case law above, the following summary may be helpful.

Section 330(a)(1) provides that, after notice and a hearing, a bankruptcy court may award estate professionals, including a trustee, "reasonable compensation for actual, necessary services rendered" in the

MEMORANDUM OF DECISION – 8

case, together with reimbursement for actual, necessary expenses.[7] Section 330(a)(3) sets forth a non-exclusive list of factors a bankruptcy court must consider in determining the "reasonableness" of a request for compensation by a trustee or estate professional, including whether the services rendered were "necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." § 330(a)(3)(c).

However, § 330(a)(7) is also important in this context. It instructs that "[i]n determining the amount of reasonable compensation to be awarded to a [chapter 7] trustee, the court shall treat such compensation as a commission, based on [§] 326." Section 326, entitled "Limitation[s] on Trustee Compensation", establishes a series of "caps", or maximum amounts of chapter 7 trustee compensation, depending upon the amount of "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

---

[7] Trustee seeks reimbursement of only $200 in additional expenses. The Court has no concerns about this aspect of the Application and intends to approve it.

MEMORANDUM OF DECISION – 9

§ 326(a). As can be seen, whereas § 330(a)(3) focuses on the actual services rendered and benefits bestowed by a trustee in determining "reasonable" compensation, § 330(a)(7) considers a single fact, the amount distributed to creditors, in fixing a trustee's fees.

The courts interpreting the Code have uniformly decided that, even absent an objection by a party, a bankruptcy court must carefully review all estate professional compensation requests, and must exercise independent judgment in determining the reasonableness of those requests based upon the facts of each case. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990). Of course, one of the challenges to the Court in satisfying its duty to review fee requests is that it must do so retrospectively, or in other words, looking backwards in time to when the services were provided and discretion and judgment was exercised by the estate professional.

Under this statutory scheme, how does a bankruptcy court review a

MEMORANDUM OF DECISION – 10

chapter 7 trustee fee request? The Ninth Circuit BAP, in *In re Salgado-Nava*, explored the interplay of the "reasonableness" requirement in § 330(a)(1), the treatment of chapter 7 compensation as a "commission" in § 330(a)(7), and the caps on compensation in § 326(a). After a thoughtful analysis, summarizing its holding, the BAP concluded that "absent extraordinary circumstances, chapter 7 . . . trustee fees should be presumed reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances. Thus, *absent extraordinary circumstances*, bankruptcy courts should approve chapter 7 . . .trustee fees without any significant additional review." *Salgado-Nava*, 473 B.R. at 921. (emphasis added). [8] While the approach adopted in *In re Salgado-Nava* might be

---

[8] Other courts examining the legal rules applicable for measuring chapter 7 trustee fee requests disagree with the panel's conclusions in *In re Salgado-Nava*; they instead reserve to the bankruptcy court the duty to carefully review chapter 7 trustee fees even in "ordinary" asset cases. Of course, this includes the undersigned bankruptcy judge, whose decision to reduce the chapter 7 trustee's fees was reversed in *In re Salgado-Nava*. 2011 WL 2518814 (Bankr. D.Idaho 2011). S*ee also, In the Matter of JFK Capital Holdings, LLC*, 880 F.3d 747 (5th Cir. 2018); *In*

MEMORANDUM OF DECISION – 11

debated, its holding is of no moment in some cases because even the BAP seems to agree that its strict, hands-off "commission" approach to reviewing chapter 7 trustee fees in routine cases is not applied when "extraordinary circumstances" are presented. *Id.* (noting that "as for chapter 7 . . . trustee fees, when confronted with extraordinary circumstances, the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis.")[9]

---

*re Scoggins*, 517 B.R. 206, 217 (Bankr. E.D.Cal. 2014); *In re Brous*, 370 B.R. 563, 568 (Bankr. S.D.N.Y. 2007); and *In re Clemens*, 349 B.R. 725, 729 (Bankr. D.Utah 2006). While the BAP's decisions are considered to have persuasive value, the Ninth Circuit has not declared them to be binding on bankruptcy courts. *In re Silverman*, 616 F.3d 1001, 1005 and n. 1 (9th Cir. 2010) (observing that "we have never held that all bankruptcy courts in the circuit are bound by the BAP", but "[n]evertheless, we treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the circuit.") *See also In re Zimmer*, 313 F.3d 1220, 1226, n.3 (9th Cir. 2002) (endorsing "Judge O'Scannlain's call for the [Ninth Circuit] Judicial Council to consider an order clarifying whether the bankruptcy courts must follow the BAP.").

[9] One perplexing, even frustrating, mystery remains for bankruptcy courts attempting to apply *In re Salgado-Nava:* what constitutes the sort of extraordinary circumstances necessary to allow the bankruptcy court to deviate from the strict, § 330(a)(7) commission approach to measuring trustee compensation? Most bankruptcy judges preside over thousands of chapter 7

MEMORANDUM OF DECISION – 12

*Analysis and Disposition*

In the Court's opinion, the circumstances in this case were anything but ordinary. Trustee seems to agree. *See, e.g.*, Affidavit at ¶ 10 (representing that "this was not the routine case and required a high level of [trustee] services, well beyond the normal amount of trustee work."). Trustee's encounter with the tainted real property, her decision to nonetheless attempt to administer it,[10] were remarkable developments as chapter 7 cases go. Trustee also acknowledges that, though she will distribute $1.75 million in this case, prepetition unsecured creditors will enjoy no meaningful financial benefit from her services. *Id.* at ¶ 29. This is also extraordinary compared to most large-asset chapter 7 cases. As a result, the Court concludes that the § 330(a)(7) commission approach to

---

cases annually. Presumably, based upon this experience, their opinions about whether a particular case is "extraordinary" deserves deference.

[10] Trustee represents that "I had to administer [the contaminated property] and achieved the best result possible." Affidavit at ¶ 28. But to be accurate, while she decided not to do so, Trustee could have instead pressed her request to abandon the property. *See* § 554(a) (providing that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.").

MEMORANDUM OF DECISION – 13

trustee compensation is not applicable in this case.

Does the lack of financial benefit to unsecured creditors resulting from Trustee's services dictate that she receive less than § 326(a) maximum compensation?

Trustee insists there are facts and circumstances to support her position that her fee request is reasonable. She correctly notes that there were no objections interposed by creditors to the proposed sale of the property and the carve-out. In addition, neither creditors nor the U.S. Trustee have objected to the TFR or the Application, nor did they object to any of the many prior fee applications filed by the estate professionals. Instead, the U.S. Trustee and Debtor's counsel appeared at the hearing to support the Application.[11]

---

[11] The limited input of the U.S. Trustee in this situation is appropriate and appreciated by the Court. *See* § 307 (providing that the U.S. Trustee "may appear and be heard on any issue in any case . . . under [title 11"); and 28 U.S.C. § 586(a)(3)(A) (providing that the U.S. Trustee shall "supervise the administration of cases and trustees" in chapter 7 cases, including review of § 330 fee applications). The "advice" offered by Debtor's counsel was less persuasive; neither the defunct Debtor, nor its lawyer, will suffer any adverse pecuniary impact as a result of this decision.

MEMORANDUM OF DECISION – 14

In addition, Trustee's representations about the nature and extent of her services in this case have not in any way been refuted. Trustee represents that "I worked on this case daily for two to three hours . . . for the first six months after my appointment" and "[i]t dominated my case load, both bankruptcy and non-bankruptcy." Affidavit at ¶10. And from the Court's review of the record, Trustee's account of the events in this case is largely confirmed. It is obvious to the Court that Trustee worked very hard to achieve her chosen solution to a challenging problem, albeit with less-than-satisfactory results for unsecured creditors. As a factual matter, then, the Court agrees with Trustee's contention that there is a "rational relationship" between the compensation requested by Trustee, and the services she performed. *Id.* at ¶2.

At bottom, there is no opposition to Trustee's fee request, and the Court is left to wrestle on its own whether, absent any distributions to unsecured creditors, maximum trustee compensation is appropriate. While it is a hard choice, the Court can not conclude that Trustee ought to receive less than maximum fees in this odd case.

MEMORANDUM OF DECISION – 15

The Court's reservations about Trustee's request for maximum § 326(a) compensation in this case amount to disagreements with several of the decisions she made in doing her job.[12]

First, it appears that Trustee's decision to administer the contaminated real property in the context of this bankruptcy case was an extremely costly one for the estate, and it yielded only questionable potential benefit to creditors. While Trustee's decision to try to "clean up" the property via a sale was perhaps a socially noble one, in the Court's view, it was difficult to justify her choice in her role as the guardian of bankruptcy estate assets and protector of the interests of unsecured creditor interests.

Having committed to liquidate the tainted property, Trustee's decision to "settle" with the secured creditor for a $150,000 carve-out in this case was also problematic. The Court doubts the secured creditor was

---

[12] The Court labors under the disadvantage of not having been the presiding judge over most of the important events that occurred in this case, including approval of the sale of the real estate, and of the various large administrative expense requests by estate professionals.

MEMORANDUM OF DECISION – 16

anxious to foreclose and reclaim polluted collateral, whereas a sale via Trustee would relieve it from any obligation to clean up the damaged land. Its interest in getting out of this jam is evidenced by its decision to accept far less than it was owed to release its lien as part of the sale. Moreover, in the Court's view, $150,000 was predictably an inadequate sum to pay anything other than administrative claims, including maximum trustee compensation.

Finally, the Court is perhaps most discouraged by Trustee's decision under these facts to ask for maximum fees. Equity, it would seem, argues for a sharing of the shortfall in distributions occasioned by her decisions by both the affected creditors and Trustee. Even a modest voluntary reduction in her fee request would have reflected favorably on Trustee under these facts. In contrast, Trustee's position that she and her attorneys be paid in full, while unsecured creditors receive nothing, seems insensitive for someone tasked to look out for creditors' interests.

But the Code vests chapter 7 trustees, not bankruptcy judges, with

MEMORANDUM OF DECISION – 17

the broad discretion to make the important decisions about how to administer bankruptcy estates. Here, Trustee made a judgment call: an abandonment of the contaminated property may have required an extended legal contest with DEQ, while a free and clear bankruptcy sale *might* have generated funds for creditors and resulted in the clean-up of the property. So, too, Trustee's decision to accept only a modest carve-out from the secured creditor's proceeds to facilitate the sale was a matter committed to her discretion. While the Court would have made different decisions, its role in this case is not to retroactively substitute its judgment for that of Trustee.

In addition, a bankruptcy court can not compel a chapter 7 trustee to seek less than the § 326(a) maximum compensation. While this Court is accustomed to trustees who voluntarily reduce fee requests when they dwarf the dividends to unsecured creditors, the Court declines to police Trustee's conscience.[13]

---

[13] The Court is mindful that, were the challenges facing Trustee in this case not so daunting as to make it an "extraordinary" one, according to the BAP, Congress would expect the Court to approve Trustee's maximum compensation

MEMORANDUM OF DECISION – 18

*Conclusion*

Based upon the facts and law, while it is an extremely close call, the Court declines to reduce Trustee's request for maximum compensation and finds and concludes that the Application should be approved. While the outcome in this case was, from the creditors' perspective, dismal, the fees requested by Trustee bear a rational relationship to the services she rendered.

A separate order will be entered approving the Application. Upon entry of the order, the Court will also approve the TFR. With apologies to Shakespear, all's well that ends.

Dated: May 16, 2018

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

request without any serious review. For what it's worth, the Court declines to believe Congress intended such a passive role for the bankruptcy courts in this context. Respectfully, the holding in *In re Salgado-Nava* should be revisited, either by the BAP *en banc,* or by the Ninth Circuit in an appropriate appeal.